Markow v. Southwest Airlines. Mr. Frank. Thank you, Your Honours. May it please the Court, Theodore H. Frank for Object to Repellent Greg Markow. This Court has repeatedly stated in Eubank, in Vollmer, in TransUnion, the background legal rule that an objector who materially improves the welfare of the class is entitled to attorney's fees. And in this case, Greg Markow's objection resulted in a tripling of class relief, a result that this Court had previously said would be hard to imagine. Markow made a very modest request for fees of less than 10 percent of the marginal benefit to the class, less than 5 percent of the total attorney's fees, and less than his attorney's And this was denied on the theory that Markow had waived his rights to seek fees. Why didn't you do it earlier? Why was that? It seemed to me that, after all this going through, he kind of came in at the last minute and decided that he wanted that. I'm sorry, I didn't. I'm, it seems that, talk about waiver, you talked about, it seemed that he did wait a long time before he decided to ask for these fees. He waited within the Rule 54d deadline under the Northern District of Illinois local rules, and if you look at the tentative agreement, that's at page 109 of the appendix, it anticipates that there's going to be notice to the class, that there's going to be more to schedule, that there's going to be more to discuss, and none of that happened. On January 25th, the Court held a hearing and said it's impossible for there to be any legitimate objections to this, so we don't need notice, and I'm going to issue an order approving everything. And that order said class counsel may now make a fee request. There was never a schedule for a fee request, a fee request was never made, and we said, well, what do we do now, and the rules say, well, within 91 days you can make a request for fees, and that's what we did. Mr. Frank, could I ask you for just an update on where things stand? Frankly, I thought this case was over three years ago. What is the current status of the vouchers and the cash available for counsel? My understanding was that the Court ordered the vouchers distributed on January 31st of 2017, and I don't- Have they been distributed? I don't have any reason to think that they haven't been, but there was never a report to the Court one way or the other on that. Any distribution of cash to counsel? I assume there was, but again, that's not in the record. Okay. Okay, as I understand the problem that Judge Cannelli was presented with for this appeal, well, the original supplemental fee request by class counsel was going to take the total fee back up close to the $3 million, right? That's correct. You ultimately agreed to dismiss your second appeal with an acknowledgement that $220,000 or so could go to class counsel, right? That the class counsel would reduce their request to $220,000. I will just say that I'm ... I'll just note that I'm a little disappointed that that appeal was dismissed, because I'll tell you, I would have voted to reverse, I think, any supplemental appeal, fee award, given where we were after the 2015 decision, but you made that call. The problem, as I see it, though, is now we've got that settlement agreement that says class counsel will receive $220,000 and change. You agreed to that, and now you seem to be seeking a result that would differ from that. Well, class counsel would receive that and then ... And turn it around and give $80,000 to you. If we would be legally entitled to that and the agreement was silent on the question of objector's fees, we never had an opportunity to formalize the agreement and put in, say, an integration clause so that nobody could claim that there were oral side agreements, but the background legal rule applies as a matter of black letter contract law when an agreement's silent on a question. Given the rather astonishing tripling of availability of coupons, and given that the fee award that we approved and modified in 2015 turned out not to be final, it has occurred to me that perhaps this court should take the extraordinary step of recalling the mandate approving the settlement in the first place. What would be your reaction to that? Well, we agreed to dismiss the appeal requesting that result, so I can't be the one to request it, but that's probably within the power of the court. It would be extraordinary. It would be extraordinary. But we have some extraordinary circumstances. And perhaps to go back to a coupons redeemed basis for the class counsel's fee award. That would be up to the court. I'll reserve time for rebuttal. All right. Thank you, Mr. Frank. Mr. Lawhorn. May it please the court. The background legal rule does not have any application here. It wasn't raised at all by Objective Mark O below with respect to when Judge Cannella was making these decisions. Now he says that Judge Cannella should have known that somehow Objective Mark O was going to have a right to come forward and make a motion for attorney's fees. In fact, what happened was once Objective Mark O stepped forward, SIPA firm opposed his attorney's fee request on the ground that had been waived because in the negotiations below, as Judge Hamlin just commented, Objective Mark O had agreed that the SIPA firm would accept a $220,000 reduced supplemental fee award and that Objective Mark O would drop his appeal, which he did. When that was argued below with respect to Judge Cannella, Judge Cannella decided so that there would be, I guess, no question about this, to have an evidentiary hearing. He called in Mr. Siprit. He called in Mr. Frank. He called in Mr. Kay Oliphant, who is Southwest counsel, and had each of them testify and ask them questions as to exactly what happened with the settlement so he could decide for He then made a fine he made a decision, which he says, and found, and I quote, and this is in A10 of the short appendix, in the settlement under which he dismissed his appeal, Mark O agreed to a reduced fee award of $200,000 for class counsel, but now Mark O is essentially asking for a reduction of that amount, a specific order that would take away part of it to pay Mark O's counsel. The standard under which that decision is to be reviewed is an abuse of discretion, and I can't find anything in either of the objector's briefs or what I just heard where the objector pointed to an abuse of discretion by Judge Cannella. What was the basis for any supplemental fee award, given that we had been told the fee was part of the cross-appeal back in 2015, and we had modestly cut that fee award. I was frankly astonished to see that there was such a request, let alone its magnitude. The basis for the supplemental fee award was that when Judge Cannella granted the initial fee award, he denied any prospective time that would go forward on working on the appeals. That was the subsequent settlement administration of the case. After the case was, the settlement was affirmed with some modifications where there was a reduction in the fee award and reduction in the incentive award, and it went back down, the separate firm went back in to try to capture that additional time. Asked for how much? I think approximately $1.7 million. That was for the work on the appeal? That was for the work on the appeal and work toward the settlement administration, and then Judge Cannella denied that and awarded approximately a third of the request. I guess it wasn't 1.7, it must have been 1.2. And awarded approximately a third of what was sought, which was $400,000. It was basically going to chew up the rest of the $3 million cap, right? It certainly was close, Your Honor. I can't disagree with the math there. The chutzpah of that award, of that demand, is astonishing after what we decided in 2015. Now, if we leave that mandate from 2015 standing and either affirm or reverse the decision on the $80,000 request here, will this case be over? Will the fees be over? If you affirm the fees, it's certainly over. If you reverse . . . There's no further argument for another supplemental fee award for this appeal? Oh, from the separate firm? No. No. Why not? That is certainly over. Why not? Well, this is just . . . I guess I would consider this ancillary litigation at this point. That wasn't something contemplated in the initial fee award. In other words . . . You're telling us there would be no further fee request from class counsel? Correct. If we affirm. And if we reverse and simply cut it back $80,000 in light of the fact that Mr. Frank's efforts do seem to have tripled the relief available to the class, anything further for the separate or class counsel to seek? No. No, Your Honor. And is there any doubt that Mr. Frank's and Mr. Marko's efforts were what led to the tripling of the offer of relief for the class? Yes. Why? They have a temporal distinction. What did lead to this tripling, this astonishing tripling of the offer? I'm trying not to . . . I don't want to fudge it. I'm going to try to answer directly as I can. Originally what happened was when Mr. Marko appealed, he proposed, or it was proposed, I don't recall which. I wasn't involved. There was a discussion in which the objective was going to walk away if SIPRC would withdraw any claim for fees. So as long as SIPRC got no more money at all, the objective was satisfied. The objective was not seeking any more relief for the class at that point in time. The separate firm was still trying to get the additional fees that Judge Connelly had approved and went to Southwest and said, well, can you guys provide more vouchers? Because now you know what the answer is to how much you've had to provide. And Southwest's response was, we will do that, but you have to suffer some pain too, and you have to cut back your monetary amount to fund the coupons. In essence, the separate firm is buying those coupons. That's what the proposal was, and ultimately the objector agreed to dismiss his appeal in exchange for that benefit which went to the class and the reduction in the fees of the separate firm. Is it correct that the coupons have been distributed? Yes, Your Honor. Have any dollars changed hands as between counsel? Has class counsel been paid yet? Yes, class counsel has been paid. How much? It would be the one, whatever the award was in the appeal that was ordered, which I guess would be the $1.7 million, and then the $227,000. That has been paid? That has been paid. And is it correct that it was not until the supplemental fee award settlement that the district judge was told that the coupons claimed were only about one-third the amount that he had been earlier told? That, I'm not sure I'll defer that to Southwest counsel. Okay. You have any thoughts on whether we should reopen the mandate? My thought would be to ask you not to. I think we had finality achieved before. We thought the case was over as well. So did I. And then Siprit comes back in and asks for another $1.3 million in fees, which is what has produced this litigation over the last three years. I don't want to quarrel with you about that, but I'm not sure that would have, if Siprit firm had not sought additional fees, that the objection still wouldn't have been lodged because there were objections to the settlement as a whole again in the second time around, which got withdrawn. I can see my time is about up, so if you don't have any further questions. Well, I don't want to drag this on, but I really am curious about the, you call them vouchers? Yes. Yeah. You got to use them. You got to get an airline ticket in, you got to get on the airline, then you got to use it. Correct. Now, do they ever expire? That was what the entire case was about. Yeah, I know, but I'm talking about now. I think now there's a two-year frame on them. I know they're transferable. I'm not sure about the expiration, because that's what people didn't have to begin with. They were given back. And so each one's worth, what, about five bucks? It's a $5 drink coupon. There's, since they're tradable in the market, at one point there was a market value of $3. You could buy them on eBay. Yeah. And then you got to get them on an airplane and order a drink. Yes, but that's what the customers had before. In order to use them, they'd have to get on an airplane and order a drink. Okay. That's all. Thank you. All right. Thank you. Mr. K. Oliphant. May it please the Court, Eli K. Oliphant of Massey and Gale, representing Southwest Airlines. Approval of the original settlement was affirmed by this Court, as you noted, Judge Hamilton, in August 2015, in an opinion where this Court stated that the class got essentially everything they could have hoped for. Years later- Turns out that wasn't quite right, wasn't it? Well it turns out- You all were willing to triple the offer. We were willing to triple the offer in order to end the long sequence of litigation. Like you, Your Honor, we were hoping that the case would conclude in August 2015, as it had been going on for four years at that time. And so therefore, when subsequent objections by Martel continued to drag us along and required us to continue to spend what we thought was unnecessary attorney fees, we were willing to give additional compensation to the class just in order to end it. And yet, here we are again. So you're correct- Could you help me with the math there? What was your assessment of why the amount was what you, I guess, agreed to request off the $3 million? I'm sorry, but I don't completely understand. You said that you decided to increase the offer to end the litigation? Correct. What did you see ahead in litigation? So Judge Flong, the original settlement agreement provided for attorney's fees up to a cap of potentially $3 million. And what had been ordered to be paid to Siprit was much less than that. 1.6 or something to that effect. So at the point that the subsequent appeal, appeal number two by Martel, was pending before this court, there was also a request by Siprit as Judge Hamilton, you recognized subsequent to the August 2015 ruling by this court for much more fees up to the $3 million. So Southwest was willing to create a modification to the settlement to give additional compensation to the class so long as Siprit would take less so that we could end the litigation. That was the math. I can't tell you the exact numbers off the top of my head, but that was the calculus if that's what you were asking. I have extremely limited time because we only reserve two minutes. The reason for that was that obviously Martel cannot request additional fees from Southwest because that would violate the original settlement agreement, which had a no further payment provision for Southwest. I would argue that Martel's current request for fees is in violation of the original settlement agreement because the original settlement agreement did not provide for fees for the objector and it also had a waiver clause that said that if Martel did not raise that objection back then, he could not bring us a fee request now. And we know that he could have objected because he objected to that settlement agreement back then on other grounds. Counsel, could you address this problem? When a district court is looking at a settlement, one of the most important features tends to be claims made, right? I take the point. And Southwest had exaggerated by a factor of three the actual number of claims made for coupons available, is that right? So your honor, with respect, I would take only issue with the word exaggerated. It was a mistake by the claims administrator who had included- By a factor of three? Yes, there was one entry- So you don't like exaggerated, but it- It was overstated. Overstated is not exaggerated, but overstated by a factor of three. Yes. That's extraordinary. How long did it take for that to come to the district court's attention? So that came to the district court's attention when I came into the case and started the process of trying to provide notice to the class for purposes of paying out the vouchers. We did an investigation of where all the vouchers were going to go and we, and the claims administrator and my firm, identified this test entry that was in the spreadsheet that the claims administrator had relied upon when he made the prior affidavit to the court back in 2000 and I think it was 13. Saying there had been a half a million claims, right? Saying that there had been, my remembrance is, 507,000 or something to that effect. Somewhere close to that number, yes. There was a test entry for 342,342 that had inadvertently been left into the spreadsheet when the claims administrator had reported out as the number of total requested vouchers. So when it came time to give notice to the class and start to prepare to actually send the vouchers out, which we anticipated doing almost two years ago, we identified the problem at that time and we immediately brought it to the district court's attention, which was at the time of the settlement modification. So the actual benefit to the class here is one-third of what everybody had thought it was? Yes, only except that the benefit to the class was one-third in terms of number of vouchers claims, but then it's three times the amount that they originally requested. So the settlement modification multiplies by three a number that was divided by three, if that makes any sense. Or almost divided by three. It's not perfect math. So they get vouchers? Excuse me? Vouchers. This is just baffling to me. Yes, well. What else are you going to do, I guess? Seven years talking about vouchers. Okay, thank you. Mr. Frank. Thank you. The disclosure to the court about the incorrect original disclosure was made January 20th, 2017. That's at page 115 of the record. The district court's original settlement approval did not know how many claims were made. The parties did not disclose that until we filed our opening brief in the first appeal. The evidentiary hearing with respect to the fee request, that only came about because SIPRC claimed one, Marco had nothing to do with the settlement improvement, and claimed two, Marco had made a separate oral agreement not to seek fees. The district court rejected, well, the district court rejected the second contention. That's at page nine of his opinion. There is no factual dispute here. The only factual dispute is legal consequences of what was agreed to. And we identified the error at pages 22 to 27 of our opening brief, and again at page two of our reply brief, when they said there's no abuse of discretion here, and we said yes there is. There is a legal error, and a legal error is by definition an abuse of discretion. In response to your earlier question to opposing parties, the vouchers expire after one year, so they should have expired by now. Mr. Frank, one of the concerns I have about your argument is that it would seem to make it very difficult to reach a definitive final settlement in class action cases. What would it take in a settlement agreement to foreclose, as you see it, further fee requests? By objectors or by class counsel? Well, I don't think class counsel could have made the supplemental fee request, and that's why we brought the second appeal. They were claiming we didn't have standing to raise that, which was one reason we settled. It wasn't clear that we did have standing to raise it, and the way we sought to have standing was to undo the entire settlement under Rule 60. But this court's Rule 60 jurisprudence is ... Challenging. Challenging. For a reason. And we had a district court that was very unhappy with us. At one point on page 64 of the appendix, it suggests that the objector should be paying $1 million in attorney's fees. So we were eager not to have to continue to litigate this. In terms of what would end it with respect to objectors, just as we did not have a clause in the settlement agreement saying we would be seeking attorney's fees, they did not have a clause in there saying we could not seek attorney's fees. Both sides left it silent and did not address it. That's what the court found at page nine, and the consequence of that as a matter of law is that the background legal rule applies. Obviously in the future, parties should do more to clear up whether there would be a future fee request. Happy to answer any other questions the court might have. Thank you, Mr. Frank. Thank you. Thanks to all counsel. The case is taken under advisement, and the court will proceed.